**IN THE COURT OF APPEALS OF IOWA**

No. 14-0562
Filed June 11, 2014

**IN THE INTEREST OF M.B.,**
**Minor Child,**

**C.B., Father,**
**Appellant.**
_____

Appeal from the Iowa District Court for Story County, Lawrence E. Jahn, District Associate Judge.

A father appeals the termination of his parental rights to his child. **AFFIRMED.**

Nathan Hostetter of Terrill, Richardson, Hostetter & Madson Law Offices, Ames, for appellant father.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, Stephen Holmes, County Attorney, and Jesse Ramirez, Assistant County Attorney, for appellee State.

Shannon M. Leighty of the Public Defender's Office, Nevada, attorney and guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., and Tabor and Bower, JJ.

**VAITHESWARAN, P.J.**

A father appeals the termination of his parental rights to his child. He contends the State failed to prove the child could not be returned to his custody. *See* Iowa Code § 232.116(1)(f) (2013). The State responds with an error-preservation concern based on the father's non-appearance at the termination hearing. We elect to bypass this concern and proceed to the merits. *See State v. Taylor*, 596 N.W.2d 55, 56 (Iowa 1999).

Our de novo review of the record reveals that, when the child was born in 2009, all concerned believed the man living with the child's mother was the father. *See In re H.S.*, 805 N.W.2d 737, 745 (Iowa 2011) (setting forth the standard of review). In time, the department of human services conducted paternity testing that confirmed another man, Chris, as the father of the child.

In 2010, the child suffered a skull fracture believed to be non-accidental. The child was removed from his home with the mother and putative father.

Beginning in May 2011, Chris participated in services to unite with the child. He had the child in his care on alternating weeks and interacted appropriately.

Chris's circumstances soon deteriorated. He had a falling out with his girlfriend and lost other support systems that resulted in a reduction of his visits to alternating weekends.

In August 2012, Chris disappeared. He did not resurface until about March 2013, when he reported he had been in Virginia. The department subsequently learned that Chris got into trouble there and was on unsupervised probation.

The department again arranged for reunification services. Chris failed to obtain a substance abuse evaluation or participate in anger management classes, as directed. While he exercised weekly supervised visits, a service provider testified he was often late and often ended visits early.

Chris curtailed visits entirely in May 2013, just two months after reinitiating them. He informed the service provider he was moving back to Virginia. Because he did not have a working phone, the department had no way of contacting him.

Seven months later, Chris provided the department with an address in Virginia. He also asked to have contact with his child. The department scheduled weekly telephone calls at a time that was convenient for Chris. Chris telephoned the child five out of twelve available times.

At the termination hearing, the department social worker overseeing the case recommended termination of Chris's parental rights. She testified, "In the last year, he's just kind of had a reckless lifestyle with his charges in Virginia and not really staying in contact or giving us information that we need to know about him when we requested it." The service provider who supervised visits seconded this opinion, stating, "Chris has not progressed in the four years that the case has been open. It has actually declined. He is very inconsistent with services, with seeing [the child]."

On this record, we agree with the district court that the child could not be united with Chris. Accordingly, we affirm the termination of Chris's parental rights to his child.

**AFFIRMED.**